Francis X. McLAUGHLIN, Plaintiff,

v.

Benjamin C. BRADLEE, et al., Defendants.

Civ. A. No. 84–1776.

United States District Court, District of Columbia.

Dec. 21, 1984.

Francis X. McLaughlin, Kensington, Md., pro se.

William E. McDaniels, David E. Kendall, Kevin T. Baine, and Gerson A. Zweifach, Williams & Connolly, Washington, D.C., for defendants The Washington Post Co., Bradlee, and Chesire.

Hugh E. Donovan, Donovan & Nash, Silver Spring, Md., for defendants Alban and Michaleski.

David A. Levin, Digges, Wharton & Levin, Annapolis, Md., for defendant Montgomery County.

CHARLES R. RICHEY, District Judge.

## INTRODUCTION

The Court has before it several motions in this case. All of the defendants have moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and Fed.R.Civ.P. 11 on the grounds that this action is barred by the doctrine of *res judicata* and collateral estoppel. The defendants also request that the Court impose sanctions against the plaintiff pursu-ant to Fed.R.Civ.P. 11 and 28 U.S.C. § 1927. Additionally, three of the defendants herein, Montgomery County, Maryland, Stanley Michaleski, and Miles Alban, have moved to dismiss on the grounds of improper venue. The plaintiff has opposed all of these motions, and they have been fully briefed and are now ripe for decision. For the reasons set forth in this Opinion, the Court has, by Order of even date herewith, denied the Motions to Dismiss for Improper Venue, and granted the Motions to Dismiss for failure to state a claim upon which relief can be granted. The Court has also decided to deny the requested sanctions at this time, but to retain jurisdiction of the question of sanctions until it is determined what further actions, if any, the plaintiff may take. If further proceedings are undertaken on the issues herein decided, the defendants may make application for a hearing to re-open this request at the earliest possible date consistent with the Court's docket and other responsibilities.

## BACKGROUND

### A. The Complaint and the Underlying Facts

The Complaint in this case contains four counts, all based on an alleged conspiracy. The first three counts are brought pursuant to 42 U.S.C. § 1983. The fourth count is a pendent claim for malicious prosecution. The named defendants are: The Washington Post Company; Post Executive Editor, Benjamin C. Bradlee; Post reporter, Maxine Chesire; Montgomery County, Maryland; and two detectives on the Montgomery County Department of Police ("MCDP"), Miles F. Alban, Jr. and Stanley Michaleski.

The facts underlying the alleged conspiracy described in the instant suit, (and in three previous suits), can be gleaned from the Complaint, the memoranda in support of the Motions to Dismiss, and from the judicial discussion of the plaintiff's previous litigation, discussed more fully herein.

In 1970, the plaintiff, an attorney, drafted a will for his client and friend, George P. Marshall, Jr. Marshall was the son of the founder of the Washington Redskins. When Marshall died in 1976, his daughters filed suit in Florida to invalidate the will. They ultimately prevailed on the ground that McLaughlin had exercised undue influence over the testator, Marshall. *In re Estate of George Preston Marshall, Jr.*, No. 76-8773 (Fla.Cir.Ct., 17th Judicial Circuit, May 10, 1978). During the course of the Florida probate proceeding, McLaughlin filed an affidavit, which had been executed in Montgomery County, Maryland, representing that he did not exercise undue influence over Mr. Marshall and that the witnesses to the will had never been financial participants with him, McLaughlin, "in any law practice or venture."

Sometime after that affidavit was filed in Florida, defendant Chesire, a Post reporter, began an investigation of the relationship between Tongsun Park and Speaker of the House of Representatives, Tip O'Neill. During the course of this "Koreagate" investigation, Chesire came across the name of Mr. McLaughlin, who apparently had some contacts with the Speaker. Chesire conducted an investigation of McLaughlin to determine if there was a relationship between him, Park, and O'Neill, apparently finding no such connection.

Ms. Chesire brought some information and rumors about McLaughlin to the attention of defendant Alban, who was a member of the organized crime unit in the MCDP. As a result, Alban also became involved in investigations into McLaughlin's background.

After some investigation, Alban concluded that there was probable cause to believe that Mr. McLaughlin had committed perjury in the execution of the affidavit in the Florida probate proceeding. In a letter dated February 24, 1978, defendant Michaleski, at the time Alban's superior in the MCDP, communicated this belief to Ms. Muriel Waldmann, an agent in the Organ-

ized Crime Bureau of the Fort Lauderdale Police Department.

On March 22, 1978, McLaughlin was charged by Information in Florida with the felony of perjury. (This Information was superceded by a similar Information dated April 11, 1978, and the March Information was *"nol prossed"*.) The Information alleged that plaintiff's affidavit, which had been filed in the Marshall probate proceeding in Florida, was false. Although the affidavit had stated that none of the witnesses to the will had been financial participants with McLaughlin, one of those witnesses, Mr. Robert F. Steeves, had served as an incorporator and director with McLaughlin in two Maryland corporations, Gaelic Gifts, Ltd., and Tex-on, Inc.

On April 3, 1978, McLaughlin was arrested in Maryland on the basis of a fugitive warrant obtained in Maryland by the Broward County, Florida, Sheriff's Office. Mr. McLaughlin was released the same day. The Maryland extradition proceedings were apparently in a state of flux for four years until 1982, when McLaughlin travelled to Florida. On March 25, 1982 he was arrested and jailed by Florida authorities on the 1978 perjury charges.

After his Florida arrest, McLaughlin's perjury charge was dismissed. The Florida Attorney General appealed this dismissal to the Florida Court of Appeals. That court affirmed the dismissal on May 29, 1983.

### B.  The Previous Litigation

Because this case involves the assertions of preclusion based on the doctrines of *res judicata* and collateral estoppel, a review of the relevant previous litigation is necessary. In 1981, Mr. McLaughlin filed, on behalf of himself and his wife, three complaints growing out of these circumstances—one in this Court[1], one in the United States District Court for the District of Maryland[2], and one in the Circuit Court for

---

**1.** *McLaughlin v. Chesire et al.*, No. 81-0779 (D.D.C. filed April 2, 1981) (Gesell, J.).

**2.** *McLaughlin v. The Washington Post Co. et al.*, No. M81-779 (D.Md. filed April 8, 1981).

Montgomery County, Maryland[3]. These three complaints were photocopies of one another with only the headings changed to reflect the different defendants named in each court. In the 1981 suit in this Court, McLaughlin joined as defendants Maxine Chesire, Miles Alban, and nine unknown "J. Doe" defendants. In the District of Maryland federal action, McLaughlin joined The Washington Post Company, E. Norman Veazy (a Wilmington, Delaware attorney), Michael J. Satz (a Florida prosecutor), David G. Vinikoor (a Florida prosecutor), the State of Florida, Stanley Michaleski, Muriel Waldmann (a Fort Lauderdale police investigator), Bryan Brooks (a Fort Lauderdale policeman), the City of Fort Lauderdale, and six unknown "J. Doe" defendants. In the Montgomery County suit, McLaughlin named Miles Alban, Montgomery County, MCDP, Robert J. DiGrazia (former chief of MCDP), Ms. Chesire, and "numerous 'J. Does'".

The 1981 complaints alleged a broad "conspiracy to discredit and oust Speaker Thomas P. O'Neill, Jr. of the House of Representatives and to discredit and to tortiously injure Plaintiff Francis X. McLaughlin." (1981 Complaints at 2). Each of the complaints included seven counts: abuse of process, false imprisonment, malicious prosecution, intentional infliction of emotional distress, invasion of privacy, business tort, and denial of constitutional rights. *Id.* at 11–15.

### 1. The Proceedings in This Court

On November 5, 1982, in the suit in this Court, Judge Gesell decided to decline to exercise pendent jurisdiction over the first six claims in the 1981 complaint, since they would be tried in the Montgomery County Circuit Court. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Doe v. Board of Professional Responsibility,* 717 F.2d 1424, 1427 (D.C.Cir.1983). On June 2, 1983, Judge Gesell granted Chesire summary

judgment as to the remaining claim, count seven, which alleged that plaintiff had been deprived of various constitutional rights, including the right to due process. The June 2 Memorandum also granted in part defendant Alban's motion to dismiss by eliminating McLaughlin's claim of false arrest in Maryland on the fugitive charge. (Memorandum at 7). This decision was based on a finding that "the arrest was lawful and none of his constitutional rights were infringed." *Id.* Judge Gesell found that "[t]here was a reasonable basis to believe perjury had occurred." *Id.* at 6.

On June 21, 1983, Judge Gesell denied McLaughlin's motion for reconsideration. On July 6, 1983, McLaughlin moved for relief pursuant to Fed.R.Civ.P. 60(b), contending that he had newly-discovered evidence of "discovery fraud" by Chesire's counsel. That motion was denied on July 15, 1983. McLaughlin appealed to the Court of Appeals for the District of Columbia Circuit. On March 9, 1984, that court summarily affirmed Judge Gesell's Order, with costs. *McLaughlin v. Chesire,* No. 83–1725 (D.C.Cir. March 9, 1984). Judge Gesell later denied another Rule 60(b) motion.

After the instant lawsuit was filed, the case against defendant Alban went to trial before Judge Gesell on the single remaining issue: "Did Alban knowingly supply false information to the Florida States (sic) Attorney in a reckless and malicious manner under circumstances constituting unlawful state action?" Memorandum at 8. On September 13, 1984, at the close of McLaughlin's evidence as to liability, Judge Gesell granted Alban's motion for directed verdict. Ruling from the bench, Judge Gesell found that "[t]here is no evidence that can go to the jury here that Mr. Alban did not have a reasonable belief that the information he was communicating was true and appropriate consistent with his duties." (Tr. at 170). Judge Gesell also stated that

---

3. *McLaughlin v. Alban et al.,* No. 51047, (Cir.Ct. Montgomery County filed June 2, 1981). This suit in Montgomery County was actually first instituted on January 31, 1979. In 1981, however, McLaughlin filed an "Amended Declaration", which was a photocopy of the other two complaints.

*Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), among other cases, demonstrated the insufficiency of the plaintiff's case. (Tr. at 171). Finally, Judge Gesell relied on plaintiff's failure to establish "that officer Alban caused the lodging of the perjury information against Mr. McLaughlin." *Id.* at 172. Judge Gesell awarded costs to the defendant. *Id.* at 173.

### 2. The Proceedings in the Circuit Court for Montgomery County

The proceedings in the Montgomery County Circuit Court were very complicated. On June 9, 1981, Judge Roslyn B. Bell granted defendant Alban's demurrer to Counts I (abuse of process) and VI ("Business Tort", i.e. interference with contractual relations), and plaintiff later filed amended Counts I and VI. On September 3, 1981, Judge Bell granted defendant Chesire's demurrers to amended Count I, and Counts IV ("Intentional Infliction, Etc.") and V (invasion of privacy). On September 18, 1981, plaintiff filed a twice-amended Count I, and amended Counts IV and V. On December 2, 1981, Judge Bell granted the demurrers by defendants Chesire, Alban, and DiGrazia to these three counts without leave to amend. On January 7, 1982, Judge Bell reversed herself as to the dismissal of twice-amended Count I, and reinstated this Count as against defendant Chesire.

On January 18, 1982, Judge Bell granted defendant Alban's Motion for Summary Judgment as to Counts II (false imprisonment), III (malicious prosecution), and VII (denial of constitutional rights). On January 31, 1983, Judge Bell dismissed, with prejudice, the last remaining Count as to defendant Alban, Count VI, as a sanction for plaintiff's continued refusal to comply with discovery orders.

Some of the Counts were still alive as to defendants Chesire and DiGrazia when Judge Bell recused herself on April 13, 1983. McLaughlin had sought her recusal because of, *inter alia,* Washington Post endorsements of the incumbent Montgomery County Judges, including Judge Bell.

Circuit Judge Calvin R. Sanders was appointed to hear the case.

The case went to trial in October, 1983. McLaughlin proceeded against defendant Chesire on Counts I (abuse of process), II (false imprisonment), III (malicious prosecution), VI (interference with contractual relations), and VII (denial of constitutional rights), and against defendant DiGrazia on Counts I and VI. The plaintiffs' case consumed 13 complete days of trial. On November 2, 1983, at the close of plaintiff's case, Judge Sanders entered a directed verdict for DiGrazia as to his remaining Counts (I and VI), and for Chesire as to Counts I and VII. Defendant Chesire then presented her case in four days, and McLaughlin put on a rebuttal case. On November 10, 1983, one month to the day after the start of the trial, the Montgomery County jury returned a verdict for Chesire on all three remaining counts.

McLaughlin appealed to the Maryland Court of Special Appeals. In that appeal, he attacked some of Judge Bell's orders, and also complained of "discovery fraud" during the trial. On June 28, 1984, the Maryland Court of Special Appeals rejected plaintiff's arguments. In its unreported Opinion, the Court stated that "the McLaughlins cite little or no authority to support the arguments raised on appeal." *McLaughlin v. Alban,* No. 1608, slip op. at 4 (Md.Ct.Spec.App. June 28, 1984). Citing five violations of the Maryland Rules, the Court dismissed the appeal with costs and with the following scolding:

> Counsel is obligated to comply with the Maryland Rules of Procedure. In a series of holdings so numerous as not to need citation, the Court of Appeals and this Court have warned over and over again that failure to read and obey the rules may result in a dismissal of the appeal. In this case we propose to do exactly that. The appeal is dismissed.

*Id.* at 4–5. On November 21, 1984, the Court of Appeals of Maryland denied McLaughlin's petition for certiorari.

*3. The Proceedings in the United States District Court for the District of Maryland*

On January 21, 1982, in the plaintiff's suit in the United States District Court for the District of Maryland, Judge Miller administratively closed the case because the plaintiff was still charged with perjury in Florida.[4] The Court later issued a stay pending the outcome of the District of Columbia case, and the Montgomery County case. On February 29, 1984, after the plaintiff's return from Florida and after trial court judgments in the other two cases, Judge Miller issued a twenty-two page Memorandum and Order granting the Post's Motion for Summary Judgment as to all seven counts. The bases for the grant of Summary Judgment were the preclusive effects of the litigation in the other courts. *McLaughlin v. Washington Post,* No. M81–779, Order of Feb. 29, 1984 (D.Md. 1984).

On March 7, 1984, McLaughlin moved for reconsideration. He contended, *inter alia,* that Judge Miller's application of non-mutual issue preclusion was unfair. He also contended that he was denied a full and fair opportunity to litigate the case, pointing to a newly discovered MCDP report. Judge Miller noted that a party's inability to present crucial evidence is but one of several factors in determining whether defensive issue preclusion is appropriate. *McLaughlin v. The Washington Post Co.,* Order of June 25, 1984 at 10, n. 6 (D.Md. 1984). In denying the motion, Judge Miller stated:

> The information provided by the plaintiffs is not sufficient to require such action [i.e. reconsideration] by this court. The document produced provides a slim reed upon which to base a conclusion that the plaintiffs were deprived of crucial evidence in their claim.

*Id.* at 10. McLaughlin did not appeal any of Judge Miller's orders.

**THE CONSPIRACY ALLEGED IN THE 1981 COMPLAINTS IS IDENTICAL TO THE ONE ALLEGED IN THE INSTANT COMPLAINT**

Plaintiff's three 1981 complaints and the instant complaint all seek to impose liability on the basis of the same alleged conspiracy. The 1981 complaints allege that in 1977 the various conspirators "acting under color of law, used the powers of the Montgomery County Department of Police, the Fort Lauderdale Police Department, the State Attorney in Fort Lauderdale, Fla., the Federal Bureau of Investigation and certain elements of the print and broadcast media to tortiously injure" the plaintiff by, *inter alia,* "widely publiciz[ing] McLaughlin's arrest on a false charge which they arranged to be placed." 1981 complaints at 2.

The alleged conspiracy in the instant complaint is virtually identical. "[B]eginning in late 1977," the various defendants "maliciously entered into a conspiracy to use the powers of state law to conduct an official investigation of McLaughlin" with the intent to, *inter alia,* have him falsely charged and arrested for perjury. Complaint ¶¶ 10, 17–20. Plainly, McLaughlin is complaining of the same conspiracy in all four lawsuits. However, he contends that the counts of the instant complaint allege "new" injuries to plaintiff, concerning claims and issues which have not yet been litigated. Accordingly, after considering the defendants' claim of improper venue, the Court analyzes each count of this complaint.

**BECAUSE SOME OF THE ACTS IN FURTHERANCE OF THE ALLEGED CONSPIRACY TOOK PLACE IN THE DISTRICT OF COLUMBIA, VENUE IS PROPER IN THIS COURT**

■ Defendant Montgomery County, Maryland, and defendants Michaleski and

---

**4.** In his January 21, 1982 Memorandum and Order, Judge Miller ruled on several motions. The only remaining defendant in that case which is also named in the instant case is the Washington Post. (Stanley Michaleski had earlier been dismissed, with prejudice). The case was administratively closed on "abstention" grounds, based on *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny. Memorandum at 14–16.

Alban, two Montgomery County police officers, claim that venue in this Court is improper as to them. *See* 28 U.S.C. § 1391(b). The case, however, involves four counts of conspiracy, in which these Montgomery County defendants are alleged to be co-conspirators. The plaintiff alleges that at least some of the conspirators furthered the conspiracy by taking actions within the District of Columbia. (Complaint ¶ 40). Accordingly, venue is established as to all co-conspirators in this district. *See Schreiber v. W.E. Hutton Co.*, 382 F.Supp. 297, 299 (D.D.C.1974). Since venue is proper in this Court as to all named defendants, the Court has denied the Rule 12(b)(3) motions of these Montgomery County defendants.

## COUNT I IS BARRED BY THE DOCTRINE OF RES JUDICATA

■ Count I of the instant complaint, brought pursuant to 42 U.S.C. § 1983, avers that the defendants' conspiracy violated "plaintiff's constitutional right to privacy against the disclosure of personal information which had been acquired under color of state law and which was maliciously disclosed by defendant Alban, acting individually and on behalf of the other defendants, to defendant Chesire in her own right and on behalf of defendants Bradlee and the 'Post'." Complaint ¶ 43. This claim, however, has been conclusively adjudicated, and plaintiff is precluded from raising it again.

The plaintiff's 1981 complaints each contained a count entitled "Invasion of Privacy." 1981 complaints ¶¶ 16–18. The plaintiff now asserts that this constitutional privacy claim is different than his earlier claim.[5] Even assuming, *arguendo*, that the common law privacy claim differed from a constitutional privacy claim, it is clear that the plaintiff has already pressed a constitutional right to privacy claim in the proceedings before Judge Gesell. As

McLaughlin stated in his brief before the Court of Appeals, while appealing Judge Gesell's dismissal of one of his § 1983 Counts against some defendants:

A district court may not arbitrarily dismiss a Sec. 1983 claim when the record shows that the plaintiff's constitutional right to privacy has been infringed by an unlawful police investigation .... The plaintiffs also contend that the conspirators, acting under color of law (the MCDP) raised the invasion of their rights to the level of a constitutional violation ....

Appellants' Brief, at 24–25, *McLaughlin v. Chesire*, D.C.Cir. No. 83–1725 (filed Sept. 19, 1983).

■ The plaintiff also states that this constitutional right to privacy count cannot be barred by the doctrine of *res judicata* because it was not until defendant Alban's testimony on October 19, 1983, and thereafter, that he learned of the unlawful disclosures of personal information. However, this claim seems to be nothing more than an assertion that the plaintiff has newly-discovered evidence to support his earlier privacy claims, brought in three separate courts. He has already presented this evidence to three courts, and all have rejected his arguments.

Significantly, the plaintiffs filed a supplemental brief in the Court of Appeals *after* those dates. There McLaughlin argued:

The cumulative incorporation into Count VII [Denial of Constitutional Rights] of all preceeding "facts and matters" necessarily included the allegations ... that certain of [plaintiff's] constitutional rights had been denied under color of law. A reading of the incorporated paragraphs shows that the appellants were alleging, among other things, *a denial of their constitutional right to privacy.* The district court ... overlooked plaintiff's claims in Count VII that they had been denied their constitutional rights to privacy.

---

5. The identity of issues is not crucial, because a final judgment on an action precludes parties from "relitigating issues that were *or could have*

*been raised." Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981) (emphasis added).

Appellants' Supplemental Brief, *McLaughlin v. Chesire*, No. 83–1725 (D.C.Cir.) (filed February 3, 1984) (emphasis supplied). Rejecting these arguments, the Court of Appeals summarily affirmed Judge Gesell's orders. *McLaughlin v. Chesire*, 731 F.2d 995 (D.C.Cir.1984).

Plaintiff also moved for relief from Judge Gesell's order pursuant to Fed.R. Civ.P. 60(b). That rule provides for relief from final judgments based, *inter alia*, on "newly discovered evidence". On June 20, 1984, well after plaintiff had discovered this new evidence, Judge Gesell denied the motion.

The case as against defendant Alban proceeded to trial before Judge Gesell on September 12 and 13, 1984. At that trial plaintiff put into evidence the "further additional proofs which had previously been fraudulently withheld by Alban." Complaint ¶ 14. Despite that evidence, Judge Gesell directed a verdict against McLaughlin on his Section 1983 claim.

McLaughlin also presented this new evidence to Judge Miller, who had either dismissed or granted summary judgment for all defendants on all counts of the 1981 complaint (including the common law privacy count, and the constitutional claim in Count VII, which, according to plaintiff, contained the constitutional right to privacy claim). On June 25, 1984, Judge Miller denied McLaughlin's Motion for Reconsideration, stating that the new evidence "provide[d] a slim reed upon which to base a conclusion that the plaintiffs were deprived of crucial evidence of their claim." *McLaughlin v. The Washington Post Co.*, Order of June 25, 1984 at 10 (D.Md.1984). *See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 333, 91 S.Ct. 1434, 1445, 28 L.Ed.2d 788 (1971).

■ Thus, plaintiff's previous litigation provided several opportunities for him to press his § 1983 constitutional right to privacy claim. He has urged that his 1981 complaint covered such a claim. Having so contended, he cannot now claim that his earlier complaints did not encompass a constitutional privacy claim. And he has presented the same "new" evidence which is now before this Court to two other federal judges, based on that earlier complaint. The plaintiff has lost on this same claim, with the same evidence, in at least two courts. The defendants contend that this extensive previous litigation should preclude plaintiff from again raising this claim.

A valid and final judgment on a claim precludes a second action on that claim or any part of it. *Restatement (Second) of Judgments* §§ 18, 19 (1982). Claim preclusion extinguishes "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Id.* § 24. Clearly, in the present case, plaintiff's privacy claim arose out of the same conspiracy, or "series of connected transactions", as that alleged in the 1981 suits.

■ For the plaintiff to be precluded from again raising this claim, he must have previously received a "full and fair opportunity" to litigate it. *E.g. Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481, n. 22, 102 S.Ct. 1883, 1897, n. 22, 72 L.Ed.2d 262, *reh'g denied*, 458 U.S. 1133, 103 S.Ct. 20, 73 L.Ed.2d 1405 (1982). It is abundantly clear that McLaughlin has had such an opportunity for this claim. As previously noted, he has already pressed this constitutional claim, together with the "new" evidence, in two federal forums. Surely this constitutes a "full and fair opportunity" to litigate this claim. *Kremer*, 456 U.S. at 481, n. 22, 102 S.Ct. at 1897, n. 22.

■ The defendants here may defensively assert claim preclusion against McLaughlin even though none of the prior suits named all six of them as defendants. (Actually, all but one of the current defendants, Post Editor Bradlee, has been named in at least one of McLaughlin's previous suits.) As Judge Miller noted in his February 29, 1984 Memorandum and Order, the leading case concerning the nonmutual use

of claim preclusion is *Gambocz v. Yelencsis,* 468 F.2d 837 (3d Cir.1972). *McLaughlin v. Washington Post,* No. 81–M779, slip op. at 9–10 (D.Md. Feb. 29, 1984). *See also* 18 C. Wright, A. Miller, and E. Cooper, *Federal Practice and Procedure* § 4464 at 587 (1981) (hereinafter "Wright and Miller").

The facts of *Gambocz* closely resemble those of the present case. In *Gambocz* the plaintiff had brought suit claiming a conspiracy to interfere with his mayoral election campaign. That action was dismissed, with prejudice, on the plaintiff's motion. The plaintiff later brought suit on the same claim against the original defendants and some new ones. The court held that because the defendants in the second suit were closely related to those in the first, in that all were allegedly involved in the same conspiracy, the defensive assertion of claim preclusion was appropriate. 468 F.2d at 842.

There is no question that the defendants in the present suit are closely related to those named in the 1981 complaints. As in *Gambocz,* most of the instant defendants were also defendants in at least one of the earlier suits. Also, as in *Gambocz,* there is only one alleged conspiracy. Indeed, the Court can find no mitigating circumstances in favor of the plaintiff, who seeks to prohibit preclusion. Accordingly, Count I of the complaint is precluded, and must be dismissed.

■ There is an additional ground for holding that Count I fails to state a claim upon which relief can be granted. As Judge Gesell observed in granting a directed verdict for defendant Alban, the leading case of *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), stated that certain police actions, which may be actionable as torts, cannot form the basis of a § 1983 privacy claim. (Tr. at 171). As in *Paul,* McLaughlin's privacy claim here is "far afield" from any of the cases recognizing a constitutionally protected interest in privacy (i.e., "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education").

424 U.S. at 713, 96 S.Ct. at 1166. Therefore, as in *Paul,* this Count fails to state a claim.

## COUNT II IS BARRED BY THE DOCTRINE OF RES JUDICATA

Count II of the complaint states a claim entitled "Constitutional Right Against False Imprisonment". This count is brought pursuant to 42 U.S.C. § 1983.

■ McLaughlin asserts that, although his earlier complaints contained a false imprisonment claim, this "new" Count is based on his March, 1982 arrest and brief imprisonment in Florida. Because these incidents took place after the filing of his 1981 complaints, plaintiff continues, these claims could not have been determined in the earlier suits. However, as demonstrated below, it has been conclusively determined that the Florida authorities had probable cause to arrest McLaughlin. Therefore, plaintiff is precluded from bringing this claim.

■ The plaintiff has cited no cases recognizing a constitutional cause of action based on false imprisonment. Presumably, because plaintiff's "liberty" interest is at stake, there is no violation if the plaintiff received "due process". Similarly, the common law tort of false imprisonment depends on a lack of "proper legal authority." W. Prosser, *Handbook of the Law of Torts,* § 11 at 46 (4th ed. 1971). The plaintiff has the burden of proving the absence of due process or legal authority. *Id.*

■ It has been conclusively established that the Florida authorities had probable cause to arrest plaintiff for perjury. Judge Gesell, in his June 2, 1983, Memorandum, addressed McLaughlin's § 1983 claim. There he ruled that "[t]here was a reasonable basis to believe perjury had occurred." *McLaughlin v. Chesire,* No. 81–0779, slip op. at 6 (D.D.C. June 2, 1983). "[T]he decision to charge [plaintiff] [with perjury] was made by Florida officials on the basis of sufficient evidence to constitute probable cause." *Id.* The plaintiff's arrest for perjury, although some years later than the

initial charge of perjury, was the direct result of that charge. Thus, Judge Gesell's finding of probable cause is fatal to plaintiff's present Count based on false imprisonment.

The doctrine of issue preclusion prohibits relitigation of this issue. The Rule states that if an issue of fact or law was actually litigated and determined by a valid and final judgment, the determination is conclusive in a later action. *Restatement (Second)*, § 27. To preclude relitigation, however, this issue must have been essential to the first judgment. *Id. See also Synanon Church v. United States*, 579 F.Supp. 967, 973 (D.D.C.1984).

Judge Gesell's finding of probable cause was actually litigated and essential to the determination of plaintiff's § 1983 claim, where the issue was whether plaintiff was "falsely charged with perjury in Florida." *McLaughlin*, slip op. at 2. *See Synanon*, 579 F.Supp. at 973. Indeed, the plaintiff has not challenged the defendants' contention that this finding was necessary to the dismissal of plaintiff's § 1983 claim. *See* Memorandum in Support of Motion to Dismiss by "Post Defendants", at 30. Therefore, Judge Gesell's finding of probable cause for the plaintiff's perjury charge, which finding was summarily affirmed by the Court of Appeals, is fatal to Counts II and IV of McLaughlin's latest complaint.

■ It is clear that the defendants may rely on this assertion of issue preclusion in the present case. "[N]on-mutual issue preclusion is permitted unless it would be unfair." 18 C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure*, § 4464 at 570 (1981). Fairness depends on several factors, among them whether the parties are substantially the same, the substantial identity of the issues, whether the earlier judgment was final, and whether the plaintiff had a full and fair opportunity to litigate the issue in the first trial. *See Jack Faucett Associates v. American Telephone & Telegraph*, 744 F.2d 118, 125 (D.C.Cir.1984). *See also Bernhard v. Bank of America*, 19 Cal.2d 807, 122 P.2d 892 (1942); *Blonder-Tongue*, 402 U.S. at

333, 91 S.Ct. at 1445; Wright and Miller, § 4464 at 572–73.

Plainly McLaughlin cannot meet his burden of proving unfairness in the present case. His only claim to the denial of a fair opportunity to litigate the case turns on the defendants' alleged withholding of evidence. However, as previously shown, that "new" evidence has been presented to both Judge Miller and Judge Gesell, who were familiar with the facts of the case. Therefore, the plaintiff will not be heard to raise these already stale claims in this court again.

## COUNT IV IS BARRED BY THE DOCTRINE OF RES JUDICATA

In Count IV, plaintiff asserts a pendent claim for malicious prosecution. According to McLaughlin, this Count, like Count II, relates to his 1982 arrest in Florida. However, as shown below, Judge Gesell's finding of probable cause defeats this claim.

■ Under Florida law, for McLaughlin to prevail on a claim for malicious prosecution, he would have to prove each of the following elements: (1) instigation of the prosecution by the defendants, (2) termination in favor of the plaintiff, (3) malice on the part of the defendants, (4) want of probable cause, and (5) damages. *Warriner v. Burdines, Inc.*, 93 So.2d 108, 109 (Fla.1957) (Emphasis supplied). As the underscored language demonstrates, plaintiff has the burden of proving lack of probable cause.

The analysis for Count IV, therefore, is the same for Count II. Because plaintiff may not relitigate the previous determination that the Florida officials had probable cause to arrest McLaughlin, Count IV, like Count II, must be dismissed.

## COUNT III IS BARRED BY THE DOCTRINE OF RES JUDICATA

In Count III, plaintiff alleges a denial of due process based on "discovery fraud" by the defendants. Complaint ¶ 49. Again, plaintiff asserts that because he did not learn of this information until October,

1983, it could not have been a basis for the earlier suits. This Count is grounded on 42 U.S.C. § 1983.

 The history of plaintiff's litigation conclusively demonstrates that this is not the first time plaintiff has raised this argument. In his appeal to the Maryland Court of Special Appeals, plaintiff raised the "discovery fraud" issue. In a brief to that Court, McLaughlin argued that "[p]roofs of highly relevant and extensive discovery fraud were obtained by the appellants some three months after the trial of this matter in the Circuit Court for Montgomery County." "Application to Enlarge Time, Etc." at 1, *McLaughlin v. Alban*, No. 1608 (Md.Ct.Spec.App. April 9, 1984). Because the alleged "discovery fraud" took place in McLaughlin's Montgomery County suit, the Maryland Court of Special Appeals was the appropriate forum in which to present that issue. *See* Md.Cts. & Jud. Proc.Code Ann. § 12–308. However, on April 18, 1984, that Court denied plaintiff's application.

Similarly, plaintiff presented this claim to Judge Miller. Judge Miller held that it was "impossible to conclude that the new evidence is crucial to the extent that plaintiffs were deprived of a full and fair opportunity to litigate." *McLaughlin v. The Washington Post*, Order of June 25, 1984 at 10 (D.Md.1984).

This finding precludes any "Due Process" claim in this Court. Certainly, if the plaintiff received "a full and fair opportunity to litigate" his claim in the Maryland court, he was not deprived of due process. Therefore, Judge Miller's determination, necessary to the judgment, precludes McLaughlin from raising the issue again here. *See Restatement (Second) of Judgments* § 27 (1982). The summary rejection of the argument by the Maryland Court of Special Appeals also compels this conclusion. *See Migra v. Warren City School District Board of Education*, —— U.S. ——, 104 S.Ct. 892 at 896, 79 L.Ed.2d 56 (state court judgment to be given same

preclusive effect in federal court as it would be given in courts of that state).

For the reasons addressed in the discussion of the previous Counts, it is fair to allow the defendants to assert that this issue has been precluded by the previous litigation. *See generally* Wright and Miller § 4464. Indeed, under the facts of this case, it would be exceedingly unfair to require the defendants to again face these charges. Thus, Count III fails to state a claim upon which relief can be granted.

## CONCLUSION

Each of the claims put forth by plaintiff's present complaint is precluded by the doctrine of *res judicata*. Plaintiff has had several "full and fair opportunit[ies]" to litigate these issues. *Blonder-Tongue*, 402 U.S. at 333, 91 S.Ct. at 1445. "There must be an end to litigation at some point." *Maryland v. Capital Airlines, Inc.*, 267 F.Supp. 298, 304 (D.Md.1967). Today the Court has issued an Order dismissing, with prejudice, each Count presented in this case. Hopefully this will mark the end of this litigation.[6] If it does not signal the end of plaintiff's litigation on these issues, the Court might later consider the defendants' requests for sanctions.

---

6. Plaintiff had also moved for partial summary judgment on Count I (constitutional right to privacy) as against defendants Alban and Mont-

gomery County. That motion is disposed of with today's dismissal.