**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO, Plaintiff,**

v.

**James M. LOY, Defendant.**

**No. CIV.A. 03–0043(RMC).**

United States District Court, District of Columbia.

Sept. 5, 2003.

Anne M. Wagner, Mark D. Roth, Gony Frieder, American Federation of Government Employees, AFL–CIO, Washington, DC, for Plaintiff.

Brian G. Kennedy, U.S. Department of Justice Civil Division, Federal Programs Branch, Washington, DC, for Defendant.

### MEMORANDUM OPINION

COLLYER, District Judge.

The American Federation of Government Employees, AFL–CIO, ("AFGE"), a union dedicated to representing government workers, initiated an organizing drive among airport screeners after Congress ordered that all airport screeners must be federal employees. AFGE filed petitions with the Federal Labor Relations Authority ("FLRA" or "Authority") in November 2002 and thereafter, seeking elections at various airports in the United States; if a majority of the airport screeners voted in favor of AFGE, the Union would become their exclusive collective bargaining representative. The organizing campaign ran into a roadblock in January 2003 when James M. Loy, Under Secretary of the Department of Transportation, determined that airport screeners would not be entitled to engage in collective bargaining (the "Loy Determination").[1]

The Transportation Security Administration ("TSA"), for which the airport screeners work, has argued to the FLRA that the Loy Determination means that the Authority must dismiss the Union's petitions for an election. The Regional Director of the FLRA's Boston Region recently agreed and entered his Decision and Order to that effect on July 7, 2003. *Department of Homeland Security and American Federation of Government Employees, AFL–CIO*, WA–RP–03–0023 etc. (Decision and Order on Petitions, July 7, 2003) (hereafter *"DHS and AFGE "*).

In the meantime, the Union and an interested airport screener brought this suit in federal court, alleging that the Loy Determination violates the constitutional rights of the airport screeners. They seek a judgment declaring that Mr. Loy did not have statutory authority to issue the Loy Determination. They ask the Court to declare that the Loy Determination deprives affected employees of their rights to free speech and association under the

---

1. Congress enacted the Homeland Security Act of 2002, Pub.L. 107–296 in November 2002. This statute created the Department of Homeland Security, which includes TSA. TSA functions were transferred into the Director- ate of Border and Transportation Security, effective March 1, 2003. The designated title for the head of TSA is now "Administrator" rather than Under Secretary.

First Amendment and to equal protection under the Fifth Amendment to the Constitution, that it violates the Aviation and Transportation Security Act, Pub.L. 107–71, 115 Stat. 597 (2001) ("ATSA"), and that it is arbitrary and capricious agency action in violation of the Administrative Procedure Act, 5 U.S.C. § 706 ("APA"). In addition, they ask the Court to enjoin Mr. Loy and his subordinates from implementing the Loy Determination.

The Court concludes that the Union's arguments concerning the statutory issues have been, and should be, made in the first instance to the FLRA and then, if needed, to the Court of Appeals. The constitutional claims lack merit and will be dismissed.

## Background Facts

Domestic passenger airplanes were used as lethal weapons by terrorists attacking the United States on September 11, 2001. One part of the Congressional response to these tragedies was passage of ATSA. As relevant here, that meant that Congress ordered that screening of passengers and cargo at commercial airports be conducted by federal employees. ATSA § 111, *amending* 49 U.S.C. §§ 44935.

ATSA established the TSA. Section 114(n) of the statute required TSA to adopt the personnel system in place at the Federal Aviation Administration ("FAA"). 49 U.S.C. § 114(n). That system extends the rights to form, join, or assist any labor organization and the right to engage in collective bargaining to FAA employees. *See* 49 U.S.C. § 40122(b)(2)(C); 5 U.S.C. §§ 7102(1) & (2). Despite this apparent approval of federal collective bargaining, Section 111(d) of ATSA granted broad authority to the Under Secretary over matters customarily subject to collective bargaining: "Notwithstanding any other provision of law, the Under Secretary of Transportation for Security may employ, appoint, discipline, terminate, and fix the compensation, terms, and conditions of employment of Federal service for" federally-employed airport screeners. 49 U.S.C. § 44935 note.

Beginning in November 2002, AFGE filed a series of petitions with the FLRA seeking elections among airport screeners at various airports and certifications as their exclusive representative for collective bargaining. Those petitions have been opposed by TSA before the FLRA on the basis of a memorandum issued by Under Secretary Loy on January 8, 2003. Mr. Loy determined that federally-employed airport screeners "shall not, as a term or condition of their employment, be entitled to engage in collective bargaining or be represented for the purpose of engaging in such bargaining by any representative or organization." Loy Determination, Exh. 1 to Defendant's Motion to Dismiss ("Def.'s Motion").

This lawsuit followed.

## Analysis

■ The Federal Service Labor–Management Relations Statute, 5 U.S.C. § 7101 *et seq.* ("FSLMRS"), extended the right to federal employees to form, join, or assist any labor organization or to refrain from any such activity, 5 U.S.C. § 7102, although certain federal employees are excluded from the statute. 5 U.S.C. § 7103. The FLRA has exclusive authority over conducting elections to determine whether a labor union has the support of a majority of employees in an appropriate unit. *See* 5 U.S.C. § 7105(2)(A) & (B). The Union's petitions for election and the TSA objection that the Loy Determination deprives FLRA of jurisdiction to conduct any election are therefore properly before that agency. *See Karahalios v. National Fed'n of Fed. Employees*, 489 U.S. 527, 109 S.Ct. 1282, 103 L.Ed.2d 539 (1989) (when FLRA

has exclusive jurisdiction, district courts cannot proceed).

The plaintiffs argue that the election petitions before the FLRA and the claims at issue here are not the same since one "concerns the scope of the Administrator's powers under ATSA" and the other turns on "whether AFGE has made a sufficient showing of interest to warrant an election." Plaintiffs' Opposition to Defendant's Motion to Dismiss at 9 ("Opp."). This argument ignores the nature of TSA's position before the FLRA: without regard to whether AFGE has demonstrated that a sufficient number of airport screeners wants to be represented by the Union, TSA argues that the Loy Determination precludes bargaining and that the FLRA is without jurisdiction. As the Regional Director's Decision and Order demonstrates, the Authority could not decide whether to hold any elections without facing foursquare the argument that Mr. Loy has exercised his lawful discretion and that it has no jurisdiction to process the petitions. *DHS and AFGE* at 19 ("Whether the Authority has jurisdiction to conduct elections pursuant to these petitions is wholly dependent on the meaning of the three statutes at issue here—the ATSA, the HSA,[2] and the FSLMRS.") Thus, on the statutory claims raised by this complaint, the basic issue is very much the same before the administrative agency and this Court.

AFGE or TSA will be able to petition the Court of Appeals for review of any adverse final decision by the members of the Authority, assuming that the Regional Director's decision is appealed. *See* 5 U.S.C. § 7123. Unlike the procedures for

the private sector under the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, a dismissal of the election petitions by the FLRA would be immediately subject to review. Since the Loy Determination, and the parties' statutory arguments about it, can receive a full court hearing should one party appeal from the decision of the FLRA, it is highly improbable that this Court would need to assume jurisdiction to ensure a forum to the plaintiffs. *See Sturm, Ruger & Co., Inc. v. Chao,* 300 F.3d 867, 874 (D.C.Cir.2002) (One factor counseling against district court jurisdiction was that "the employer's claims can still 'be meaningfully addressed in the Court of Appeals' after the [Occupational Safety and Health Review] Commission has rendered a decision.")[3]

Inasmuch as the fundamental issue of statutory law regards the jurisdiction of the FLRA and the parties are currently litigating those very issues before the FLRA, with court review available, this Court does not have jurisdiction to decide the same claims.

The plaintiffs bring to this Court constitutional claims that they assert raise issues beyond the jurisdiction of the FLRA. The First Amendment claim is based on the alleged effect of the Loy Determination. Plaintiffs state that TSA airport screeners have been chilled in their willingness to engage in organizing activities because of the Loy Determination. *See* Opp. at 4 (federal screeners have "experienced a chilling effect on their right to organize such that a hostile environment has been created at some airports"), and 7–8 ("directive's transparent chilling effect

---

2. Homeland Security Act of 2002, Pub.L. 107–296.

3. The Regional Director's finding that "the clear meaning of the ATSA" gave the Under Secretary "authority [to] determin[e], on January 8, 2003, that security screening personnel are not permitted to engage in collective bargaining," necessarily means that the Under Secretary did not act in an arbitrary or capricious manner in violation of the APA.

upon their speech and associational activities"). Their Fifth Amendment claim is based on an alleged violation of the equal protection clause because the airport screeners are "being arbitrarily deprived of their right to participate in protected activities, ostensibly for national security reasons, while other airport workers continue to enjoy this right." Opp. at 8. The plaintiffs initiated the petition process in November 2002, before issuance of the Loy Determination. Therefore, contrary to TSA's argument, it cannot be said that they "elected" their forum for resolution of the constitutional claims.

■ Nonetheless, the FLRA could probably have considered these constitutional arguments. "When the statutory and constitutional claims are 'premised on the same facts' and the [FSLMRS] remedy 'would have been fully effective in remedying the constitutional violation,' exhaustion [of administrative remedies] is required. Only in the unusual case in which the constitutional claim raises issues totally unrelated to the [FSLMRS] procedures can a party come directly to district court." *Steadman v. Governor, U.S. Soldiers' and Airmen's Home,* 918 F.2d 963, 967 (D.C.Cir.1990) (cites omitted). The "statutory claim" at issue here concerns the rights of airport screeners working for TSA to select union representation and engage in collective bargaining. The "constitutional claim" arises from TSA's reliance on the Loy Determination to eliminate these bargaining rights. In reaching his decision, the Regional Director fully considered the rights of federal employees to form, join and assist unions under both the FSLMRS and Section 114(n) of ATSA and compared those to the discretion granted to the Under Secretary by Section 111(d) of ATSA. There appears no reason

why the FLRA could not have considered the plaintiffs' constitutional claims in the process. *Nat'l Treasury Employees Union v. FLRA,* 986 F.2d 537 (D.C.Cir.1993) (remanding for FLRA consideration of first amendment issues); *see also Sturm, Ruger & Co., Inc. v. Chao,* 300 F.3d at 874 (administrative adjudicators can determine constitutional claims when "(1) 'the reviewing body is not the agency itself but an independent Commission'; (2) the Commission has addressed constitutional claims in previous enforcement proceedings; and (3) the employer's claims can still be 'meaningfully addressed in the Court of Appeals' after the Commission has rendered a decision").[4]

The Court recognizes that there are differences between the statutory and constitutional claims and that, despite the principle of exhaustion of administrative remedies, district courts can assert jurisdiction over "claims considered wholly collateral to a statute's review provisions and outside the agency's expertise." *Thunder Basin Coal Co. v. Reich,* 510 U.S. 200, 207, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994). Plaintiffs seem to have avoided raising their constitutional claims before the FLRA—*DHS and AFGE* does not mention them—in order to bring them here. They cannot now be added to that case on appeal. *DHS and AFGE* at 29 ("An application [to the Authority for review] may not raise any issue, or allege any facts, not timely presented to the Regional Director."). Therefore, in order to avoid the possibility that constitutional wrongs would have no redress, the Court will resolve those issues even though they might have been argued to the FLRA.

■ Unfortunately for the plaintiffs, however, their constitutional claims are in-

---

4. The members of the FLRA adjudicate cases in the same manner as the Occupational Safe-

ty and Health Review Commission, which was the agency referenced in *Sturm, Ruger.*

substantial. The Loy Determination does not prevent airport screeners from engaging in organizing activities or joining the Union. Indeed, the Under Secretary instructed employees in a memo contemporaneous to the Loy Determination that "employees are still free to engage in employee organizational activities as long as they do not do so on work time and it does not interfere with our security work or otherwise undermine aviation security." Def.'s Motion, Exh. 4 at 2. Rather, the effect of the Loy Determination is on the other side of the table: it relieves TSA of any obligation to deal or bargain with AFGE. The right of federal employees to require the government to engage in collective bargaining is not constitutional but purely statutory. *See Smith v. Arkansas State Highway Employees,* 441 U.S. 463, 464–65, 99 S.Ct. 1826, 60 L.Ed.2d 360 (1979). The Court respects the decision of the Regional Director that the Under Secretary acted within his lawful statutory discretion in issuing the Loy Determination.

The Court understands that the airport screeners might feel "chilled" in their interest in representation but that is because the fruit of Union representation is a collective bargaining agreement and TSA has determined that it will not negotiate. The fact that these employees cannot engage in organizing on work time does not rise to a constitutional issue. As the ancient adage says, "Work time is for work" and the First Amendment does not say otherwise. The facial challenge to the Loy Determination under the First Amendment is without merit and will be dismissed.

■ The plaintiffs' equal protection claim under the Fifth Amendment has no greater force. Since a distinction limiting the collective bargaining rights of public employees involves neither a fundamental right nor a suspect classification, there need only be a rational relationship between any disparity of treatment and some legitimate government purpose. *Cent. State Univ. v. Am. Ass'n of Univ. Professors,* 526 U.S. 124, 119 S.Ct. 1162, 143 L.Ed.2d 227 (1999); *Ass'n of Civilian Technicians, Montana Air Chapter v. FLRA,* 756 F.2d 172, 177–78 (D.C.Cir. 1985). As detailed in *DHS and AFGE,* Congress acted intentionally and after significant debate when it granted the Under Secretary full discretion in the employment of security screeners because of their critical and sensitive law enforcement duties.

Congress itself, not the Under Secretary, distinguished between airport screeners and other TSA personnel. The Loy Determination addressed only those employees mentioned in § 111(d) of the statute—airport security screeners. Congress was specifically concerned about ensuring that TSA have the right to hire and fire airport security screeners as needed according to the demands and pressures of their jobs. *See DHS and AFGE* at 6 ("The participants in this Federal security workforce will not be able to strike or engage in work stoppages, and can be fired at the discretion of the Secretary if they are not able to adequately perform their duties. The Conferees recognize that, in order to ensure that Federal Screeners are able to provide the best security possible, the Secretary must be given wide latitude to determine the terms of employment of screeners.'" (citations omitted)). For the same reason, airport screeners are not covered by the protections of the normal federal civil service system. *See DHS and AFGE* at 10–11 n. 21 (" '[T]he majority has said time and again you cannot have Federal workers because it is too hard to fire them. It is too hard to move them around. So we give you the flexibility to write the rules

the way you want to do it ....'" (cite omitted)).

There is a rational basis for distinguishing, as Congress has done, between airport security screeners and other TSA employees. On this point, the statute represents a compromise of conflicting views with the single aim of providing heightened security through management flexibility. A different choice might have been made but Congress could rationally conclude that airport security requires federal employees who operate with more flexibility than either civil service or collectively-bargained protections and procedures would allow.

■ Finally, the plaintiffs have moved for leave to supplement the complaint. They assert that TSA has applied the Loy Determination to threaten employees with discipline and/or termination for conducting union organizing activities while not on duty in violation of the First Amendment. The revised complaint also alleges that Mr. Ferace, a lead Union organizer and plaintiff here, was discharged on the day after the decision in *DHS and AFGE* issued. AFGE argues that "justice requires that Plaintiffs be allowed to supplement their complaint to include an 'as applied' challenge" to the Loy Determination, in addition to the facial challenge to the Determination in the initial complaint. TSA opposes the motion insofar as it would add Mr. Ferace's discharge to this litigation.

The allegations concerning Mr. Ferace in the supplemental complaint assert that he "actively promoted the effort to obtain union recognition," that the Regional Director's decision issued on July 8, 2003, that "TSA summarily discharged [Mr. Ferace on July 9, 2003] ... allegedly for

disclosing personnel information to fellow screeners in an incident occurring May 20, 2003, nearly two months prior to the date of discharge," and that "TSA unlawfully discharged [Mr. Ferace] in retaliation for engaging in activity protected under the First Amendment."

Normally, the Court would defer Mr. Ferace's complaint about discharge due to union organizing activities to the expertise of the FLRA, despite its current posture as a First Amendment complaint. However, the FLRA has determined that it has no jurisdiction over airport screeners at TSA and that airport screeners have no statutory rights to engage in union organizing. Therefore, this Court is the only forum available to consider and adjudicate Mr. Ferace's constitutional claim.[5] Therefore, the Court will accept the supplemental complaint for purposes of providing a forum to Mr. Ferace.

The plaintiffs' statutory claims are dismissed for lack of jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. The constitutional claims are dismissed for failure to state a claim under Rule 12(b)(6). The Court severs Mr. Ferace's individual First Amendment complaint from this suit so that the parties will be free, should they choose to do so, to appeal immediately.[6] A separate Order accompanies this Memorandum Opinion.

---

**5.** Mr. Ferace was a probationary employee when discharged so that he has no available grievance or internal agency appeal process available to him.

**6.** Because the Court has severed Mr. Ferace's First Amendment complaint, his counsel must refile the complaint with the Clerk's office and pay the filing fee.