**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO and James E. Ferace, Plaintiffs,**

v.

**James M. LOY and Transportation Security Administration, Defendants.**

No. 1:03–CV–01935(RBW).

United States District Court, District of Columbia.

Aug. 24, 2004.

cases do not support her testimony in this regard.

Anne M. Wagner, Washington, DC, for Plaintiffs.

Jacqueline E. Coleman, U.S. Department of Justice, Washington, DC, for Defendants.

### MEMORANDUM OPINION

WALTON, District Judge.

This matter is before the Court on Defendants' Motion to Dismiss, Plaintiffs' Opposition to Defendants' Motion to Dismiss, ("Pls.' Opp."), and Defendant's Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss, ("Defs.' Reply"). Upon consideration of the parties' submissions, the Court grants in part and denies in part the defendants' motion to dismiss.

### I. Background

Part of Congress' response to the terrorist attacks of September 11, 2001 was the enactment of the Aviation and Transportation Security Act, Pub.L. 107–71 ("ATSA"), which mandated passenger airline airport screening be conducted by the federal government specifically under the authority of defendant, Transportation Security Administration, ("TSA"). Complaint for Declaratory and Injunctive Relief ("Compl."), ¶¶ 7–9. The ATSA incorporated the Federal Aviation Administration's ("FAA") personnel management system as set forth in 49 U.S.C. § 40122, into the TSA's personnel management system. *Id.* at 9. The aspect of this system relevant to this case designates, in 49 U.S.C. § 40122(g)(2), that TSA employees have "the right to join and form a labor organization for the purpose of collective bargaining." *Id.* ¶ 10.

Plaintiff American Federation of Government Employees, AFL–CIO ("AFGE") represents 700,000 federal government employees and sought to add the TSA airport screeners to the groups to which it provides collective bargaining representation. *Id.* ¶ 3. In November 2002, the

AFGE submitted two petitions to the Federal Labor Relations Authority ("FLRA"), requesting that the TSA employees at the Baltimore–Washington International Airport and LaGuardia Airport in New York City have the opportunity to elect the AFGE as their representative. *Id.* ¶ 11.[1] The other plaintiff, James E. Ferace ("Ferace"), is a former Pittsburgh International Airport security screener with the TSA who supported the AFGE's campaign to represent airport security screeners. *Id.* ¶ 4. He began his tenure at the Pittsburgh facility on August 28, 2002 and was terminated in July 2003. *Id.*[2]

On January 8, 2003, defendant James M. Loy ("Loy"), acting in his official capacity as the Administrator of the TSA, issued a memorandum "prohibiting federal airport screeners employed by [the] TSA from engaging in collective bargaining or from being represented for the purpose of engaging in such bargaining by any representative or organization." *Id.* ¶ 14 (referring to memorandum issued by Loy entitled "Determination Regarding Collective Bargaining—TSA Security Screeners" dated January 8, 2003 ("Loy Determination")). The plaintiffs allege that the TSA managers "in reliance on Loy's memorandum, [undertook] a pattern and practice of threatening disciplinary action against [the] TSA screeners [who] engaged in constitutionally protected organizational activities." *Id.* ¶ 16. The plaintiffs further allege that "private sector airport screeners at other major airports ... continue to enjoy the right to join labor organizations and to engage in collective bargaining." *Id.* ¶ 20. Loy subsequently issued a second memorandum stating that "employees are still free to engage in employee organ-

ization activities as long as they do not do so on work time and it does not interfere with [the TSA's] security work or otherwise undermine aviation security." Letter from Loy to TSA Security Screeners dated January 9, 2003 ("Second Loy Determination") at 2.

While the AFGE's petitions were pending before the FLRA, the AFGE filed a complaint in this Court on January 10, 2003, pleading the following four counts: (1) Loy did not have statutory authority to issue the Loy Determination, (2) the Loy Determination "deprives plaintiffs of their rights of free speech and association under the First Amendment[,]" (3) the Loy Determination "deprives plaintiffs of their right of equal protection under the law guaranteed by the Fifth Amendment to the United States Constitution[,]" and (4) the Loy Determination "is contrary to Pub.L. 107.71, § 101(n) and otherwise is arbitrary and capricious under the standards set forth in 5 U.S.C. § 706." Defs.' Mem., Exhibit ("Ex.") 3 (Complaint for Declaratory and Injunctive Relief ("*Loy I* Compl."), ¶¶ 15–22). The AFGE later moved and was permitted to supplement its complaint to allege that the "TSA has applied the Loy Determination to threaten employees with discipline and/or termination for conducting union organizing activities while not on duty in violation of the First [A]mendment ... [and that] Ferace was discharged on the day after" the FLRA issued its decision to dismiss the union's petitions for an election. Defs.' Mem. Ex. 1, (*Am. Fed. of Gov't Employees v. Loy ("Loy I")*, 281 F.Supp.2d 59, 61, 66 (D.D.C.2003)). The plaintiffs argued that they should "be allowed to supplement their complaint to include an as applied

---

1. Sixteen additional petitions for other airport employees followed and were signed by at least 30 percent of the TSA employees at each airport. Compl. ¶¶ 12–13.

2. The Court notes a discrepancy in the plaintiffs' Complaint, which first cites Ferace's date of termination as July 10, 2003 in ¶ 4 and July 9, 2003 in ¶ 19.

challenge to the Loy Determination in addition to the facial challenge to the Determination[.]" *Id.* (internal citations omitted).

The FLRA dismissed the AFGE's petition on July 8, 2003, on the grounds that the Loy Determination superseded its jurisdiction to allow the election. Compl. ¶ 18. The TSA then terminated Ferace's employment in July of 2003 "allegedly for disclosing personnel information to fellow screeners in an incident occurring [on] May 20, 2003[.]" *Id.* ¶ 19. Subsequently, on September 5, 2003 Judge Collyer, a fellow member of this court, dismissed the plaintiffs' statutory claims pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction because the plaintiffs' claims raised the same issues that were properly before the FLRA and the "AFGE or [the] TSA will be able to petition the Court of Appeals for review of any adverse final decisions by the members of the [FLRA.]" *Loy I*, 281 F.Supp.2d at 63. The plaintiffs' constitutional claims were also found to be within the ambit of the FLRA's jurisdiction. *Id.* at 64. The court, however, dismissed the plaintiffs' constitutional claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. *Id.* at 66. The court reasoned that even if the plaintiffs' constitutional claims were properly before it, the employees inability to "engage in organizing on work time does not rise to a constitutional issue." *Id.* at 65. Moreover, the court found that the restriction placed on the bargaining rights of the TSA employees was rationally related to the legitimate government purpose of "heightened security through management flexibility. A different choice might have been made but Congress could rationally conclude that airport security requires federal employees who operate with more flexibility than either civil service or collectively-

bargained protections and procedures would allow." *Id.* at 66. Accordingly, Ferace's individual First Amendment claim was severed and "[t]he plaintiff's statutory claims [were] dismissed for lack of jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure [while] [t]he constitutional claims [were] dismissed for failure to state a claim under Rule 12(b)(6)." *Id.* The District of Columbia Circuit affirmed the dismissal of the AFGE's claims in May of 2004, *Am. Fed'n of Gov't Employees, AFL–CIO v. Loy*, 367 F.3d 932 (D.C.Cir.2004), concluding that the District Court should not have addressed the merits of AFGE's constitutional claims and that all of their claims should have been dismissed by the District Court for lack of jurisdiction under Rule 12(b)(1). *Id.* at 936–937.

On September 17, 2003, 12 days after *Loy I* was dismissed by Judge Collyer, the plaintiffs filed the complaint in this case, asserting three claims: (1) the defendants violated the plaintiffs' rights "to engage in organizational and other expressive activity," (2) the defendants violated the plaintiffs' "right to engage in First Amendment activity in a manner that also violates the equal protection of law guaranteed of the Fifth Amendment to the United States Constitution[,]" and (3) the "TSA unlawfully discharged the plaintiff James Ferace in retaliation for exercising his rights to freedom of speech and association in violation of the First Amendment to the U.S. Constitution." Compl. ¶¶ 21–26. The defendants now move to dismiss Counts I and II of the complaint on the ground that they are barred by the principle of *res judicata*, or in the alternative, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state claims upon which relief may be granted. Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss ("Defs.' Mem."), at 1–3. The

defendants also move to dismiss Count III for failure to state a claim. *Id.* at 3.

## II. Res Judicata

### A. Legal Standard

Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). "The four factors that must exist for *res judicata* to apply are (1) identity of parties in both suits; (2) a judgment rendered by a court of competent jurisdiction; (3) a final judgment on the merits; and (4) the same cause of action in both suits." *Polsby v. Thompson*, 201 F.Supp.2d 45, 48 (D.D.C.2002). Satisfaction of all four factors "extinguishes 'all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'" *McLaughlin v. Bradlee*, 599 F.Supp. 839, 847 (D.D.C.1984) (quoting Restatement (Second) of Judgments § 24 (1982)). "[C]onserving judicial resources, avoiding inconsistent results and engendering respect for final court judgments" underlie the purpose for invoking *res judicata*. *Hardison v. Alexander*, 655 F.2d 1281, 1289 (D.C.Cir.1981).

Here, the defendants allege that Counts I and II of the plaintiffs' complaint are barred pursuant to the principle of *res judicata* because all four prerequisites for the doctrines application are satisfied. Defs.' Mem. at 7–12. The plaintiffs "recogniz[e] that the parties in *Loy I* and the instant case are the same[.]" Pls.' Opp. at 6. The plaintiffs also acknowledge "that the [C]ourt did issue a final judgment on the merits of the plaintiffs' claim that the [Loy Determination] was unconstitutional on its face." *Id.* at 6–7.[3] Therefore, because the jurisdiction of the court in *Loy I* is not being challenged, the only factor in dispute in this case is whether *Loy I* and the present action are the same cause of action. The court in *Does I through III v. District of Columbia and MRDDA*, 238 F.Supp.2d 212, 217–218 (D.D.C.2002) squarely addressed this issue.

---

**3.** Although the District of Columbia Circuit affirmed the dismissal, it concluded that the District Court should not have addressed the merits of AFGE's constitutional claims because it lacked jurisdiction. *Am. Fed'n of Gov't Employees, AFL–CIO v. Loy*, 367 F.3d 932, 936–37 (D.C.Cir.2004). However, "the fact that a court [does] not have jurisdiction over a suit in which it issues a decision does not automatically strip that decision of preclusive effect." *Christopher Village, L.P. v. United States*, 360 F.3d 1319, 1329 (Fed.Cir. 2004). "In most circumstances a judgment may not be collaterally attacked on the ground that the original tribunal lacked subject matter jurisdiction, even if the issue of subject matter jurisdiction was not litigated in the first action"; *Id.* at 1329–30 (citing *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n. 9, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982))(explaining that principles of *res judicata* apply to the issue of subject matter jurisdiction, and that "[a] party that has had an opportunity to litigate the question of subject matter jurisdiction may not ... reopen that question in a collateral attack upon adverse judgment."); *see also* Restatement (Second) of Judgments § 12 (1982) (recognizing exceptions to this rule when "[a]llowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government;" which is not applicable in this situation). Here, *res judicata* applies because the district court in *Loy I* considered the plaintiffs' constitutional claims and found them to be unconvincing. *Loy I* at 64. The court reasoned that "[t]he fact that these employees cannot engage in organizing on work time does not rise to a constitutional issue." *Id.* at 65. Likewise, the "equal protection claim under the Fifth Amendment ha[d] no greater force." *Id.* Therefore, the merits of the plaintiffs' constitutional claims were addressed and adjudicated. Accordingly, the *res judicata* impact is not affected by the jurisdictional ruling.

The determination of what constitutes a single cause of action is focused on the "nucleus of facts" surrounding a transaction rather than the legal theories utilized by the parties (citing *Page v. United States,* 729 F.2d 818, 820 (D.C.Cir. 1984)). Following the Restatement (Second) of Judgments the D.C. Circuit has set forth several factors to determine if a claim arises from a previously litigated transaction or occurrence. These factors include, "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." A single cause of action may include not only claims previously litigated but also claims that arise from the same transaction or occurrence of the previous action that could have been litigated therein.

*Id.* at 217–18 (quoting *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg.,* 723 F.2d 944, 949 n. 5 (D.C.Cir.1983)) (citing *Stroman v. Blue Cross and Blue Shield Ass'n,* 966 F.Supp. 9, 11 (D.D.C.1997); *Page v. United States,* 729 F.2d 818, 820 (D.C.Cir. 1984)).

An example of the application of the above analysis is *Polsby v. Thompson,* 201 F.Supp.2d at 50–51. The plaintiff in *Polsby* was precluded under *res judicata* from pursing alleged post-employment retaliation claims because they were the same cause of action resolved in prior litigation. *Id.* Employing this Circuit's adopted "pragmatic, transaction" approach, *U.S. Indus., Inc. v. Blake Constr. Co.,* 765 F.2d 195, 205 (D.C.Cir.1985) (citing *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.,* 723 F.2d 944, 949 n. 5 (D.C.Cir.1983) & Restatement (Second) of Judgments § 23(2)(1982)), the *Polsby* court considered the same factors quoted alone by the court in *Does.* 201 F.Supp.2d at 50 (citing *U.S.*

*Indus.,* 765 F.2d at 205). The Court also noted that the District of Columbia Circuit "has pointed out that a critical issue is whether a [plaintiff] has previously had an opportunity to present evidence on [his] claim." *Id.* In dismissing the plaintiff's claims on *res judicata* grounds, the *Polsby* court held that all of the plaintiff's claims could have been raised in two prior cases he had initiated. *Id.* The court emphasized that "[t]he same set of events that served as the basis for the plaintiff's Title VII discrimination and retaliation claims in [the earlier litigation]" also formed the basis for current claims. *Id.* Moreover, the *Polsby* court noted that "[e]ven if [the plaintiff's] claims [were] not identical to those [he] brought in [the earlier litigation], they still arose from the same 'transaction or occurrence' and thus did not merit further consideration by the court." *Id.* The court completed its analysis stating that "[b]ecause the doctrine of *res judicata* dictates that 'once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or be lost . . . .'" (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 789 F.2d 589, 593 (7th Cir. 1986)).

A similar conclusion was reached in *McLaughlin,* where a former member of this bench ruled that all four of the plaintiff's claims were barred by *res judicata.* 599 F.Supp. at 846–850. In particular, the first count of the complaint was dismissed because the "plaintiff's previous litigation provided several opportunities for him to press his claim . . . [a]nd he presented the same 'new' evidence which is now before this Court to two other federal judges, based on that earlier complaint." *Id.* at 847. The third count was also dismissed because "[t]he history of plaintiff's litigation conclusively demonstrate[d] that this [was] not the first time plaintiff [had] raised this argument." *Id.* at 850.

Conversely, in *Drake v. Fed. Aviation Admin.*, 291 F.3d 59 (D.C.Cir.2002), the plaintiff, a Delta Airline flight attendant, brought his first cause of action in the United States District Court for the Eastern District of New York against defendant Delta Airlines, alleging that drug testing procedures conducted by the defendant violated both Federal Aviation Administration ("FAA") regulations and the Fourth Amendment. *Id.* at 64. After the district court dismissed the case, the plaintiff appealed the dismissal to the Second Circuit and subsequently requested that the FAA investigate Delta for alleged unlawful processing of his urine sample. *Id.* at 66. Before the investigation was completed, the plaintiff filed a second cause of action against the FAA in this Court ("*FAA I*"). *Id.* at 64–65. The plaintiff alleged in his second lawsuit that the FAA regulations he challenged in the first suit violated the Fourth Amendment and procedural due process. *Id.* at 64. The plaintiff filed yet a third action ("FAA II"), also in this Court, after the FAA had completed its investigation and concluded that Delta had not violated the FAA regulations as alleged by the plaintiff. *Id.* at 64–65. In his third lawsuit, the plaintiff challenged the reasonableness of the FAA's investigation decision and alleged that it was the product of a conspiracy between the FAA and Delta. *Id.* at 65. The second and third actions were ultimately dismissed by the district court, on the ground that "it grew out of the same factual nucleus as did FAA I." *Id.* On appeal, the District of Columbia Circuit held that the plaintiff's claims had been improperly dismissed on *res judicata* grounds because "many of the central events underlying *FAA II* had not even taken place at the time when Drake instigated *FAA I*." *Id.* at 65. The court reasoned that "[t]he doctrine [of *res judicata*] does not bar a litigant from doing in the present what he

had no opportunity to do in the past." *Id.;* *see also Lawlor v. Nat'l Screen Service Corp.*, 349 U.S. 322, 327–28, 75 S.Ct. 865, 99 L.Ed. 1122 (1955) ("That both suits involved essentially the same course of wrongful conduct is not decisive .... [A prior judgment] cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case.") (internal citations omitted); *Stanton v. District of Columbia Court of Appeals*, 127 F.3d 72, 79 (D.C.Cir.1997) (concluding that a claim is not the same cause of action as "litigation over the validity of similar conduct occurring after the acts covered by the initial litigation."); *Page*, 729 F.2d at 820 (concluding that the plaintiff's action concerning events occurring before the filing of his first action were barred by *res judicata*, but events which occurred thereafter were not barred by *res judicata* ).

**B. Analysis**

The defendants contend that the plaintiffs are pursuing the same causes of action in the present case in Counts I and II of their complaint as were pursued in *Loy I* because the language used to articulate the three counts is essentially the same in both complaints. Defs.' Mem. at 8. For example, the defendants compare paragraph 18 of the *Loy I* complaint to paragraph 22 (Count I) of the present complaint. Defs.' Mem. at 8. Paragraph 18 of the *Loy I* complaint states that "[t]he directive prohibiting federal airport screeners employed by [the] TSA from engaging in collective bargaining or to be represented by an organization for the purpose of engaging in such bargaining deprives [the] plaintiffs of their right to free speech and association under the First Amendment." Similarly, paragraph 22 of the present complaint states that the "[d]efendants

have deprived [the] plaintiffs of their right to engage in organizational and other expressive activity in violation of the First Amendment to the United States Constitution." Further support for the defendants' contention is the nearly identical claims in paragraph 20 of the *Loy I* complaint and paragraph 24 (Count II) of the present complaint. Paragraph 20 of the *Loy I* complaint states that "[t]he directive prohibiting federal airport screeners employed by [the] TSA from engaging in collective bargaining to be represented by an organization for the purpose of engaging in such bargaining deprives plaintiffs of their right of equal protection under the law guaranteed by the Fifth Amendment to the United States Constitution." Paragraph 24 of the present complaint states that the "[d]efendants have deprived plaintiffs of their right to engage in First Amendment activity in a manner that also violates equal protection of law guaranteed by the Fifth Amendment to the United States Constitution."

In further support of their position, the defendants also point to the nearly identical factual allegations of both complaints. Specifically, paragraph 10 of the *Loy I* complaint states that the Loy Determination "effectively prohibits federal airport screeners employed by the TSA from engaging in collective bargaining or from being represented for the purpose of engaging in such bargaining by any representative or organization." Similarly, paragraph 14 of the present complaint states that the Loy Determination "prohibit[s] federal airport screeners employed by [the] TSA from engaging in collective bargaining or from being represented for the purpose of engaging in such bargaining by any representative or organization."[4] Additionally, the defendants point out that the relief sought by the plaintiffs in Count I is identical to the relief requested in *Loy I.* Defs.' Reply at 6 n. 6.[5]

The plaintiffs, on the other hand, deny that the complaint in this case is barred by *res judicata* because "the instant Complaint, which focuses on [the] TSA's actions subsequent to the issuance of the [Loy Determination] clearly involves claims based on occurrence and facts that did not even exist at the time of the original action challenging the [Loy Determination] itself." Pls.' Opp. at 9. The plaintiffs further state that

[t]he thrust of the [*Loy I*] complaint was that the Administrator had exceeded his statutory authority and otherwise

---

4. The defendants also compare paragraph 14 of the *Loy I* complaint with paragraph 20 of the present complaint as another example of the identical allegations contained in both complaints. Specifically, paragraph 14 of the *Loy I* complaint states that "private sector airport screeners at other major airports including O'Hare International in Chicago and Los Angeles International Airport, continue to enjoy the right to join labor organizations and to engage in collective bargaining." Similarly, paragraph 20 of the present complaint states that "private sector airport screeners at other major airports, including O'Hare International in Chicago and Los Angeles International Airport, continue to enjoy the right to join labor organizations and to engage in collective bargaining."

5. Specifically, the defendants state:

*Compare* Compl. in *Loy I* at 6 para. (2) (requesting an order '[d]eclaring that the directive issued by Under Secretary Loy prohibiting airport screeners from engaging in collective bargaining or form being represented by an organization for the purpose of engaging in such bargaining deprives plaintiffs of their right to free speech and association under the First Amendment') *with* Compl. at 7 para. (1) (requesting an order "[d]eclaring that Defendants are unlawfully depriving plaintiffs of their right to engage in organization and other expressive activity in violation of the First Amendment to the United States Constitution."). Defs.' Reply at 6 n. 6.

violated the statutory rights of [the] TSA employees in issuing the memorandum, and that unlawful action would intimidate employees in the exercise of their First Amendment rights to engage in organizational activities on behalf of the union .... By contrast, the events underlying the instant Complaint took place after the first action had been filed, and are, therefore, not barred by *res judicata*.

*Id.* at 8–9.

■ Despite the plaintiffs' representations, this Court concludes that Counts I and II of the complaint are barred by the doctrine of *res judicata*. The plaintiffs' claims here are akin to the plaintiff's claims in *McLaughlin*. 599 F.Supp. at 847, 850. Like the plaintiff in *McLaughlin*, who offered the same evidence and factual allegations as in previous suits, the present complaint and the *Loy I* complaint bear striking similarities with respect to both their factual allegations and legal theories, as noted by the defendant. *Id.* The purported "new" factual allegations in the present complaint allege that the Loy Determination was applied by the TSA managers and supervisors in such a way that deprived the plaintiffs' of their First and Fifth Amendment rights. Specifically, the complaint alleges that under the authority of the Loy Determination, the TSA managerial personnel discouraged efforts to unionize the TSA employees and have perpetuated "a pattern and practice of threatening disciplinary action against TSA screeners engaged in constitutionally protected organizational activities." Compl. ¶¶ 15–16. These allegations clearly equate to the "as applied challenge to the Loy Determination" advanced in the plaintiff's supplemental complaint in *Loy I*. 281 F.Supp.2d at 65. As already noted, in *Loy I*, the plaintiffs moved for leave to supplement the complaint arguing that

"justice requires that [the plaintiffs] be allowed to supplement their complaint to include an 'as applied' challenge" to the Loy Determination. *Id.* at 66. The court accepted the supplemental complaint in order to provide a forum to Mr. Ferace, reasoning that

> [n]ormally [it] would defer Mr. Ferace's complaint ... to the expertise of the FLRA, despite its current posture as a First Amendment complaint. *Id.* However, [because] the FLRA has determined that it has no jurisdiction over airport screeners at TSA and that airport screeners have no statutory rights to engage in union organizing ... this Court is the only forum available to consider and adjudicate Mr. Ferace's constitutional claim. Therefore, the Court will accept the supplemental complaint for purposes of providing a forum to Mr. Ferace.

*Id.* (footnote omitted). Thus, before the Court in *Loy I* was the claim that the "TSA has applied the Loy Determination to threaten employees with discipline and/or termination for conducting union organizing activities while on duty in violation of the First Amendment." *Id.* These allegations are identical to the allegations alleged in the present complaint, namely, that "TSA managers and supervisors have undertaken, in reliance on Loy's memorandum, a pattern and practice of threatening disciplinary action against TSA screeners engaged in constitutionally protected organizational activities." Compl. ¶ 16. Because these same allegations were presented and addressed by the court in *Loy I*, they are barred from being relitigated here pursuant to the doctrine of *res judicata*. *Polsby*, 201 F.Supp.2d at 48.

Additionally, the factual events underlying the enforcement of the Loy Determination arise out of the same "nucleus of facts" involved in *Loy I. Does*, 238

F.Supp.2d at 217–18. The facts alleged in both complaints "are related.in time space [and] origin" because they arise out of the issuance and enforcement of the Loy Determination. *Id.* "[T]reatment as a unit conforms to the parties' expectations" as it is reasonable that any claims arising out of the Loy Determination would be raised in the same cause of action, and in fact they were raised in *Loy I. Id.* (internal citations omitted). The plaintiffs rely on *Drake* for the proposition that the factual events which give rise to the present complaint occurred after *Loy I* was filed. Pls.' Opp. at 8 (citing *Drake,* 291 F.3d at 66). However, contrary to the plaintiffs' positions, they are not being barred "from doing in the present what [they] had no opportunity to do in the past." *Drake,* 291 F.3d at 65. Unlike the plaintiff in *Drake* who could not have raised in *FAA II* the allegations advanced in *FAA I* because they had not yet occurred, the plaintiffs here could have, and in fact did, allege in their supplemental complaint in *Loy I* that the defendants application of the Loy Determination violated their First and Fifth Amendment rights by "threaten[ing] employees with discipline and/or termination for conducting union organizing activities while not on duty[.]" *Loy I,* 281 F.Supp.2d at 65. Accordingly, the Court must dismiss Counts I and II of the plaintiffs' complaint as they are barred by the doctrine of *res judicata.*[6]

## III. Failure to State a Claim

### A. Legal Standard

To survive a motion to dismiss, a complaint need only provide " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41,

47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (citing Fed.R.Civ.P. 8(a)). And, when reviewing a motion to dismiss, the court must accept as true all the factual allegations contained in the complaint. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). A motion to dismiss under Rule 12(b)(6) tests not whether a plaintiff will ultimately prevail on the merits, but only whether the plaintiff has properly stated a claim for which she is entitled to relief. *Woodruff v. DiMario,* 197 F.R.D. 191, 193 (D.D.C.2000). Thus, a complaint should not be dismissed for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99.

A government employee alleging deprivation of his First Amendment rights "must prove that his conduct was constitutionally protected[,]" by satisfying a four part test. *Taylor v. Resolution Trust Corp.,* 973 F.Supp. 178, 182 (D.D.C.1997). This four part test consists of the following factors:

> First, the public employee must have been speaking on a matter of public concern. If the speech is not of public concern, it is unnecessary to scrutinize the basis for the adverse action absent the most unusual circumstances. Second, the court must consider whether the governmental interest in promoting the efficiency of the public services it performs through its employees without disruption, outweighs the employee's interest, as a citizen, in commenting upon matters of public concern, and the interest of potential audiences in hearing

---

6. The Court concludes that because Counts I and II of the plaintiffs' complaint are barred pursuant to the doctrine of *res judicata,* the Court need not address whether these counts state a claim for which relief may be granted.

what the employee has to say[.] Third, the employee must show that [the employee's] speech was a substantial or motivating factor in prompting the retaliatory or punitive act of which [the employee] complains. And finally, the employer should have an opportunity to show by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct.

*Edmonds v. United States Dep't of Justice,* 323 F.Supp.2d 65, 78–79 (D.D.C.2004) (quoting *O'Donnell v. Barry,* 148 F.3d 1126, 1133 (D.C.Cir.1998)); *see generally Orange v. District of Columbia,* 59 F.3d 1267, 1272 (D.C.Cir.1995); *Hall v. Ford,* 856 F.2d 255, 258 (D.C.Cir.1988). "The first two inquiries are questions of law for the court to resolve. The latter two are questions of fact ordinarily left to the jury." *Hall,* 856 F.2d at 258 (internal citations omitted).

■ "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). "[O]nly if a court finds that the public employee's speech meet[s] this threshold requirement should the court go on" to the balancing test. *Am. Postal Workers Union, AFL–CIO v. United States Postal Serv.,* 830 F.2d 294, 300 (D.C.Cir.1987). Speech is of public concern when it relates to " 'issues about

which information is needed or appropriate to enable members of society' to make informed decisions about the operation of their government[.]" *Hall,* 856 F.2d at 259 (quoting *McKinley v. City of Eloy,* 705 F.2d 1110, 1114 (9th Cir.1983)).[7] The District of Columbia Circuit recognized that "[t]he urge to unionize certainly falls within the category of expression that is 'fairly considered as related to any matter of political, social, or other concern to the community[.]' " *Am. Postal,* 830 F.2d at 301 (quoting *Connick,* 461 U.S. at 146, 103 S.Ct. 1684). Therefore, membership in labor unions and associated activity are matters of public concern because " 'speech in the context of union activity will seldom be personal; most often it will be political speech.' " *Dist. Council 20 v. Dist. of Columbia,* 150 F.Supp.2d 136, 143 (D.D.C. 2001) (quoting *Boddie v. City of Columbus,* 989 F.2d 745, 750 (5th Cir.1993)).

The balancing component of the test, which evaluates "whether the governmental interest in promoting the efficiency of the public services it performs ... outweighs the employee's interest," *Edmonds,* at 78–79, "requires full consideration of the government's interest in the effective and efficient fulfillment of its responsibilities to the public." *Connick,* 461 U.S. at 150, 103 S.Ct. 1684. The Supreme Court has "considered two possible justifications for punishing a public employee's speech: because 'it interfered with the efficient functioning of the [government] office' or because it

---

**7.** *See Orange,* 59 F.3d at 1273 (finding that the plaintiff's speech was a matter of public concern because it regarded "potential fraud at a public university."); *Spiegla v. Hull,* 371 F.3d 928, 935–36 (7th Cir.2004) (holding that "issues of prison security, public safety, and official corruption are matters of" public concern). Speech is *not* of public concern "when it is clear that such speech deals with individual personnel disputes and grievances and that the information would be of no relevance

to the public's evaluation of the performance of governmental agencies." *Id.* (quoting *McKinley,* 705 F.2d at 1114); *see Connick v. Myers,* 461 U.S. 138, 147–49, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) (holding that the plaintiff's speech was not a matter of public concern because "it did not bring to light actual or potential wrongdoing or breach of public trust on the part of [the defendant] and others.").

had 'discredited the office by [being heard] ... in public.' " *Am. Postal,* 830 F.2d at 301 (quoting *Rankin v. McPherson,* 483 U.S. 378, 384, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987)). And "[t]he Government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs. This includes the prerogative to remove employees whose conduct hinders efficient operation[.]" *Arnett v. Kennedy,* 416 U.S. 134, 168, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).

### B. Analysis

Here, the defendants maintain that Ferace fails to satisfy the first prong of the four-part test because he "has not alleged any speech at all" that is protected by the First Amendment. Defs.' Mem. at 13. In particular, the defendants argue that the factual allegations that "Ferace was actively and openly engaged in the effort to organize [the] TSA employees for the purpose of securing collective bargaining and other protections[,]" and that "Ferace actively promoted the effort to obtain union recognition among [the] TSA employees at the Pittsburgh Airport" do not relate to a matter of public concern. *Id.* at 14. The defendants rely on *Loy I* for the proposition that "[t]he right of federal employees to require the government to engage in collective bargaining is not constitutional but purely statutory." *Id.* at 65. Additionally, the defendants contend that even if Ferace's activities satisfy the first prong of the test, "Ferace's interest in organizing [the] TSA employees should not be deemed paramount to [the] TSA's ability to enforce the standards of conduct governing federal airport security screeners."

Defs.' Mem. at 16. In this regard, the defendants note that the government authorized Loy "to determine the terms and conditions of federal airport security screeners' employment" to promote its interest of ensuring "that these workers provided the best security in the nation's airports." *Id.* at 15.

Finally, the defendants posit that Ferace's claim does not sufficiently prove that the plaintiff's union organizing activities were a substantial motivating factor that brought about his termination. *Id.* at 17. According to the defendants, absent actual "dates of any particular efforts by [the plaintiff], this Court cannot infer that they were in any way related to his discharge[.]" *Id.* Moreover, the defendants argue that "[t]he mere fact that [the FLRA's denial of the AFGE's petition] preceded [Ferace's] termination is insufficient to create an inference that the two events are related." *Id.* at 18. Rather, the defendants' contend that because Ferace was not a party to the FLRA decision, the Court should not infer that he was terminated in retaliation for participation in that administrative proceeding. Defs.' Reply at 11.

The plaintiffs, on the other hand, contend that "the Court must accept all the allegations in the [c]omplaint as true, and grant [the] plaintiffs the benefit of all inferences that can be derived from the alleged facts." Pls.' Opp. at 12. The plaintiffs argue that Ferace's speech is protected under the First Amendment because it is speech relating to the organization of labor unions, which has been held to be a matter of public concern. *Id.*[8] Thus, the plaintiffs maintain

---

8. In particular, the plaintiffs point out that the Complaint alleges that at least 30% of TSA screeners at each of the facilities where AFGE sought recognition expressed a desire for a union by signing representa-

tion petitions. It further claims that TSA screeners handed out pamphlets in support of AFGE's effort to organize the workforce. It states that TSA employees are otherwise engaged in organizational activities....

that because the Court must accept the allegations in the [c]omplaint as true, "[the d]efendants come nowhere near showing 'beyond a reasonable doubt' that plaintiffs can prove no set of facts to support their claim that plaintiff Ferace and other TSA employees have been retaliated against for engaging in activities protected under the First Amendment[.]" Pls.' Opp. at 12.

With respect to the balancing part of the test, the plaintiffs contend that "absent any evidence of actual concrete harm arising from [Ferace's] constitutionally protected activities, this Court may not hold as a matter of law that the government's asserted interest is paramount." *Id.* at 15. Specifically, the plaintiffs argue that the defendants have not come forth with any evidence that "a TSA employee's advocacy of or membership in the union impedes the performance of his or her duties or otherwise interferes with the regular operation of the enterprise." *Id.* at 14. The plaintiffs further maintain that although the "TSA contends that its interest in the 'effective functioning of the workforce' overrides that of the plaintiffs[,] . . . [the] plaintiffs do not seek to engage in such activity, and [the] defendants do not cite any instances when [the] plaintiffs have asserted a right to do so." *Id.*

Finally, the plaintiffs maintain that Ferace's attempts to organize a labor union are causally connected to his termination. *Id.* at 15. In support of their position, the plaintiffs point out that (1) Ferace's allegation of retaliation coincide with allegations that the TSA sought to "prohibit organization efforts by its employees at airport facilities throughout the country" and that [the] TSA sought to penalize [the] TSA

employees that engaged in such activities, *id.* at 15–16; (2) Ferace "was a readily identifiable target of [the] TSA's policy, pattern and practice of anti-union hostility" because he participated in the AFGE's attempts to represent [the] TSA employees, *id.* at 16; (3) the fact that Ferace was discharged the day after the FLRA decision supports the inference that once defendants had cause to believe that their desire for a nonunion workforce would be legally sanctioned, they quickly moved to eliminate Ferace as a voice in opposition to that policy, *id.;* and that (4) the defendants' reasons for discharging Ferace are "pretextual and [the] TSA's real purpose in removing him was to retaliate against him for his union activities." *Id.*

 Based on the foregoing, the Court must deny the defendants' motion to dismiss Ferace's claim on the ground he has failed to state a claim upon which relief may be granted. Consistent with prior rulings of the District of Columbia Circuit, Ferace's conduct related to union organization activity at the Pittsburgh Airport is a matter of public concern as it reflects "the urge to unionize." *Am. Postal,* 830 F.2d at 301; Compl. ¶¶ 4, 17. The Court also finds that Ferace's claims tilt the balancing component of the test in his favor.

While the "[e]ffective functioning of the workforce of federal airport security screeners" is undeniably a matter of significant government interest, the defendants fail to show how this interest was compromised by Ferace's open support of union membership. Defs.' Mem. at 15; Pls.' Opp. at 14. Rather, the defendants' speculatively assert that the government's interest in airport security was endan-

---

[and that Ferace] asserts that he "actively promoted the effort to obtain union recognition among TSA employees at Pittsburgh airport" and further identifies him as being

"actively and openly engaged in the effort to organize TSA employees."
Pls.' Opp. at 13 (internal citations omitted).

gered because Ferace's activity conflicted with the Loy Determination. Defs.' Mem. at 15–16. While they make this assertion, the defendants have not come forth with any affirmative evidence that Ferace's union organizing activities " 'interfered with the efficient functioning of [the TSA's] office' " or that Ferace's conduct " 'discredited [the TSA] by [being heard] ... in public.' " *Am. Postal,* 830 F.2d at 301 (quoting *Rankin,* 483 U.S. at 384, 107 S.Ct. 2891).

This Court also concludes that Ferace has sufficiently alleged that his union organizing activity was a substantial motivating factor for his termination to avoid dismissal for failure to state a claim upon which relief may be granted. Ferace's allegations that he was engaged in union organizing activities, that the TSA implemented a policy discouraging such activities and that he was terminated one or two days after the FLRA denied the AFGE's petitions permit an inference that his union related conduct was a reason for his termination. Pls.' Opp. at 15–16. Although the defendants' assertion that Ferace was discharged because of an unrelated incident that occurred in May 2003, at this stage of the proceedings the allegation is insufficient to merit dismissal pursuant to Rule 12(b)(6).

## IV. *Conclusion*

For the reasons set forth above, the Court concludes that Defendant's Motion to Dismiss must be granted as to Counts I and II of the complaint, but denied as to Count III of the complaint.